UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST HARPER,

|                | Plaintiff, | Civil Action No.: 14-11630 |
|----------------|------------|----------------------------|
|                |            | Honorable Laurie J. Michelson |
|                | v.         | Magistrate Judge Elizabeth A. Stafford |

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.

_____/


### REPORT AND RECOMMENDATION
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 16, 18]

Plaintiff Ernest Harper appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying his applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under the Social Security Act (the "Act").  Both parties have filed

summary judgment motions [R. 16, 18], which were referred to this Court

for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The Court finds that the Administrative Law Judge ("ALJ") erred in failing to

find that Harper meets a Listing that deems him disabled and that the ALJ's

residual functional capacity ("RFC") was not supported by substantial

evidence.  For these reasons, the Court **RECOMMENDS** that:

- Harper's motion **[R. 16]** be **GRANTED**;

- the Commissioner's motion **[R. 18]** be **DENIED**; and,

- the Commissioner's decision be **REMANDED** for entry of an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

At the time of the administrative hearing, Harper was a fifty-two-year-old high school drop-out who had previously worked as a security guard and an assembler at a car parts manufacturer, jobs which are considered semi-skilled and unskilled, respectively. [R. 12-2, Tr. 25].

On September 22, 2011, Harper filed applications for DIB and SSI, alleging disability as of December 17, 2010.  [R. 12-5, Tr. 172-83].  He alleged that he became disabled in December 2010 from conditions that included chronic back pain, nerve damage to his leg and foot, arthritis, sleep apnea, depression and memory loss.  [R 12-2, Tr. 25, R. 12-5, Tr. 177, R. 12-6, Tr. 214].  The claims were denied initially on March 2, 2012, and Harper filed a timely request for an administrative hearing.  [R. 12-4, Tr. 123-33].  Harper and a vocational expert (VE) testified during a hearing on April 4, 2013 before an administrative law judge ("ALJ").  [R. 12-2, Tr. 39-90].  In a July 25, 2013 written decision, the ALJ found Harper not disabled.  [*Id.*, Tr. 20-38].  On February 26, 2014, the Appeals Council

2

denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.  [*Id.*, Tr. 1-6].  Harper filed for judicial review of the final decision on April 24, 2014.  [R. 1].

## II.   THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

DIB and SSI are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

3

impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential process, the ALJ concluded that Harper was not disabled.  At step one, she found that he had not engaged in substantial gainful activity since his alleged onset date.  [R. 12-2, Tr. 25]. At step two, she identified the following severe impairments: "degenerative disc disease, peripheral neuropathy, depression, sleep apnea, and degenerative joint disease."  [*Id.*].  At step three, the ALJ compared Harper's severe impairments to Listings 1.00, 1.02, 3.09, 3.10, 11.04, 11.14, and 12.04 and found that none of his severe impairments met or medically equaled any listing.  [*Id.*, Tr. 26].

Next, the ALJ assessed Harper's RFC, finding him capable of a

4

limited range of light work, which included a restriction to a sit-stand option "(such as every 30-60 minutes)," no frequent bending, squatting, crouching, kneeling or climbing of stairs, no balancing or crawling, and no working at hazardous heights or around dangerous machinery.  [*Id.*, Tr. 28].  The ALJ also limited Harper to "simple repetitive tasks such as those jobs at the 'SVP' one or two level."  [*Id.*].

At step four, the ALJ determined that Harper could not perform his past relevant work in light of the foregoing RFC.  [*Id.*, Tr. 30-31].  At step five, the ALJ concluded, with the assistance of VE testimony, that a hypothetical claimant matching Harper's profile could perform a substantial number of jobs in the national economy and thus he was not disabled under the Act.  [*Id.*, Tr. 31-32].  The VE specifically testified that such a hypothetical claimant could perform the jobs of assembler (1,100 jobs in the local market), inspector (1,100 jobs) or cashier II (2,200 jobs).  [*Id.*, Tr. 84-85].

## III.  ANALYSIS

### a. Standard of Review

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r*

5

*of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards.  "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings."  *Gentry*, 741 F.3d at 723.  *See also Rogers*, 486 F.3d at 249.  In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in

6

the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner is further required to adhere to its procedures, however the failure to do so will be considered harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

The majority of Harper's arguments are cursory and underdeveloped. Nevertheless, after a review of the record, the Court finds that Harper meets Listing 1.04 and should be found disabled, and that the ALJ's RFC is not supported by substantial evidence. As such, Harper's motion for summary judgment should be granted, and a remand for an immediate award of benefits should be ordered.

7

**b. Harper Presented Sufficient Evidence to Meet Listing 1.04**

At step three, the ALJ found that Harper's conditions did not meet or medically equal a listed impairment, including those associated with the musculoskeletal system. [R. 12-2, Tr. 26]. The Court disagrees. Listing 1.04, regarding disorders of the spine, requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R. Pt. 404, subpt. P, Appx. 1, Listing 1.04 (1997). "Nerve roots," which are also called "radicular nerves," exit through holes in the bone of the spine. "Radiculopathy" refers disease involving the nerve root, typically caused by compression.[3]

Rejecting the application of any listings associated with the musculoskeletal system, the ALJ reasoned that "there is no medical evidence of nerve root compression with a motor loss (atrophy and muscle

---

[3] http://www.spine-health.com/conditions/spine-anatomy/radiculopathy-radiculitis-and-radicular-pain; http://www.medicinenet.com/radiculopathy/article.htm; http://www.emoryhealthcare.org/spine/medical-conditions/lumbar-radiculopathy.html

weakness)."  [R. 12-2, Tr. 26, citing to R. 12-7, Tr. 336-37].  The ALJ cited a January 2012 CT scan in support of her determination. [*Id.*]. However, she inexplicably disregarded material findings that were either within other records she cited in her opinion or that were more recent than the January 2012 CT scan.

For example, the ALJ mentioned in her opinion that Harper's August 2012 MRI "revealed two protruded discs," but not the further finding from that MRI of a L5-S1 disc herniation that "was compromising on the exiting nerve." [R. 12-2, Tr. 28; R. 12-8, Tr. 518, 521].  The ALJ discussed in detail Harper's April 2012 EMG that "only showed old mononeuropathies, and no radiculopathy."  [R. 12-2, Tr. 30; R. 12-10, Tr. 720].  She then summarily dismissed the November 2012 EMG test stating that it was "inconsistent" with the earlier one; she did not bother to reveal that this more recent EMG showed "evidence of an L4-L5-SI radiculopathy."  [R. 12-2, Tr. 30; R. 12-8, Tr. 643-44].  Yet, physicians with Harper Hospital's neurology unit, where Harper treated from July 2012 to January 2013, repeatedly noted that his chronic back pain was "getting steadily worse over the last few years, definitely in the last year," [R. 12-10, Tr. 721, 731, 741], which would help to explain the "inconsistency" between the November EMG and the earlier study.

9

When rejecting the application of any Listings, the ALJ also indicated that there was no evidence of "atrophy and muscle weakness," and cited a January 2012 examination that documented only "mild muscle weakness in the lower extremity." [R. 12-2, Tr. 26; R. 12-7, Tr. 335]. Besides incorrectly stating that the Listing required both atrophy *and* muscle weakness as opposed to muscle weakness alone, the ALJ omitted any discussion of the more recent medical records documenting more severe left leg weakness and even bilateral weakness. [R. 12-7, Tr. 334-35, 435-36; R. 12-8, Tr. 521, 643; R. 12-9, 656-57]. She additionally failed to mention the numerous medical records satisfying other Listing 1.04 requirements, including findings of limited lumbar range of motion, decreased sensation and reflexes, and positive straight leg raising tests, [R. 12-7, Tr. 335, 436, 438, 442, 484-85; R. 12-8, Tr. 521, 640, 643; 12-9 656-57].

Of further note, the ALJ grossly misrepresented the record by stating that Harper took only modest pain medication and that there was "little mention of Vicodin in the record." [R. 12-2, Tr. 29]. In truth, Wook Kim, M.D., provided Harper with lumbar facet joint nerve blocks at S1 on a monthly basis from October 2012 to February 2013 for his radiculopathy, and prescribed him Vicodin during that same time period. [R. 12-8, Tr. 640-46]. As of March 2013, Harper was taking Vicodin about three times a

day.  [*Id.,* Tr. 594].

Calling Harper's claims of significant pain incredible, the ALJ represented that he only wanted physical therapy for swimming, and "would want full physical therapy services if he were really very symptomatic."  [*Id.*] However, Harper received physical therapy from July to September 2012, and from January to February 2013, at the Rehabilitation Institute of Michigan.  [R. 12-9, Tr. 647-683].  The treatment comprehensively was intended to improve his abilities to walk, squat, bend, transition from sit to stand, and to improve his range of motion and strength.  [*Id.*, 658, 670, 678].  However, when therapy was discontinued on February 28, 2013 "due to plateau in status," he could do no squatting and had moderate or severe impairments in the areas of meal preparation, housework, gait, bending, transitioning from sit to stand, sleeping and strength.  [*Id.,* 670].  These records do not contradict Harper's claims of significant symptomology.

Without explanation, the ALJ disregarded treating physician Abbey Akinwumi, M.D.'s opinion that Harper suffers from severe radiculopathy. [R. 12-8, Tr. 557, 562-63].  That opinion was supported by the EMG study that Dr. Kim interpreted as revealing radiculopathy, the findings of compression of the root nerve, as well as the documentation of the associated symptoms that are described in Listing 1.04.  [R. 12-7, Tr. 335-

11

37, 435-36, 438, 442, 484-85; R. 12-8, Tr. 518, 521, 640-46, 643-44; 12-9 Tr. 647-683]. The ALJ explicitly refused to give weight to Dr. Akinwumi's conclusion that Harper is totally disabled, and she was entitled to do so. [R. 12-2, Tr. 30]. *Dunlap v. Comm'r of Soc. Sec.*, 509 Fed. Appx. 472, 475 (6th Cir. 2014) (ALJ need not defer to treating physician' opinion that claimant is disabled); 20 C.F.R. § 404.1527(d) (same). However, she was required to give controlling weight to Dr. Akinwumi's diagnosis of severe radiculopathy, or justify with substantial evidence the decision to not do so. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-46 (6th Cir. 2007). The ALJ gave no justification whatsoever for rejecting Dr. Akinwumi's opinion that Harper suffered from severe radiculopathy.

For all of these reasons, the ALJ's finding that Harper did not meet Listing 1.04 is not supported by substantial evidence. The question then becomes whether an order of remand should be for further evaluation or for an award of benefits. "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Here, the record is adequate and it establishes that Harper suffers from nerve root

12

compression and radiculopathy, that he has experienced limitation of

motion of the spine, muscle weakness, sensory and reflex loss, and that

straight-leg testing has elicited positive results.  This record is

overwhelming proof that Harper meets Listing 1.04, and evidence to the

contrary is lacking.  Thus, the Court recommends that this matter be

remanded for an award of benefits.

### c.  The ALJ's RFC is Not Supported by Substantial Evidence

The ALJ inexplicably ignored other relevant evidence in the record

that undermines the adequacy of her RFC, and buttresses this Court's

opinion that remand is warranted.  For instance, the ALJ completely

omitted any reference to Harper's need for a cane despite the fact that the

record is replete with references to his use of a cane, his use of the cane at

his hearing, clinical impressions that his ability to walk is aided by the use

of the cane, and the state agency's own doctor's opinion that Harper

required a cane for ambulation.  [R. 12-2, Tr. 66, 71-72; R. 12-3, Tr. 103-

104; R. 12-7, Tr. 320, 346, 421; R. 12-8, Tr. 520; R. 12-9, Tr. 676; R. 12-

10, Tr. 652, 656, 661].  The ALJ failed to include the need for a cane in

either her RFC or her hypothetical question to the VE.  [R. 12-2, Tr. 28, 80-

88].

The ALJ also minimized Harper's foot drop by emphasizing that a

13

report indicated that his foot drop was actually improving and an exam

revealed and that he no significant vascular disease in the lower

extremities.  [R. 12-2, Tr. 29-30; R. 12-7, Tr. 484; R. 12-8, Tr. 583-84;].

However, the one-time mention in May 2012 that Harper's foot drop was

improving is insufficient to establish a longitudinal picture of the severity of

his condition. *Jacques v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 729, 743

(S.D. Ohio 2013) (review of the longitudinal record necessary for disability

determinations).

Medical doctors took Harper's foot drop more seriously.  For

example, in July 2012, Martin A. Tuma M.D. concluded that Harper

"suffer[ed] extensive venous valular insufficiency and hyperlipidemia" and

experienced "difficulty walking."  [R. R. 12-8, Tr. 583].  Dinesh Tanna, M.D.,

a state agency consultant, determined that Harper's foot drop and need for

a cane seriously limited his ability to engage in pushing or pulling, including

the use of foot controls, in his left foot.  [R. 12-3, Tr. 103-104].

Nonetheless, this restriction was not included in the ALJ's RFC or her

hypothetical to the VE.

Nor did the ALJ discuss or consider the portions of Dr. Tanna's RFC

that indicated that Harper could stand or walk a total of two hours, needed

a cane for prolonged ambulation, could sit for six hours a work day and

14

should avoid concentrated exposure to vibration.  [R. 12-3, 103-04].  The ALJ failed to mention Dr. Tanna's opinion or more restrictive RFC at all.  [R. 12-2, Tr. 28, 80-88].  This constitutes error. Although consulting and non-examining physicians are not entitled to the same deference afforded a treating physician, an ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions." *Keeton v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 515, 525 (6th Cir. 2014).

This error was not harmless.  The ALJ found that Harper could engage in a limited range of light work, including a restriction to sit/stand option.  [R. 12-2, Tr. 28].  Light work "requires good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §404.1567(b). A policy statement specifies that light work requires standing or walking up to six hours in an eight hour day. SSR 83-10.  Dr. Tanna's limitation of Harper to two hours of standing or walking per day, if considered by the ALJ, could have significantly eroded the base of light work available.  Indeed, Dr. Tanna's limitations fit neatly within the definition of sedentary work, which provides that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10.

15

The ALJ's RFC did include a sit/stand option "such as every 30-60 minutes," but the hypothetical she gave to the VE did not include any specified increments in which Harper would need to alternate between sitting and standing.  [R. 12-2, Tr. 83-87]. This was error, because an RFC must be supported by the testimony of a VE with a hypothetical that accurately reflects the claimant's limitations.  *Martinez v. Comm'r of Soc. Sec.*, 692 F. Supp. 2d 822, 825 (N.D. Ohio 2010) (VE's testimony could not serve as substantial evidence to support ALJ's RFC when the hypothetical to the VE did not include the standing-walking limitation set forth in the RFC). Thus, even without considering Dr. Tanna's additional restrictions, the ALJ's RFC is not supported by substantial evidence.

Further, even though the hypothetical did not include the thirty to sixty minute intervals for the sit-stand option, the VE identified jobs that were predominantly sedentary, and only "a couple of jobs" that would comport with light, unskilled skilled.  [R. 12-2, Tr. 83-84].  That is not surprising, as "one cannot assume that individuals limited to light work with a sit/stand option can perform the full range of light jobs because many, if not most, light jobs do not afford an employee the option to sit or stand at will." *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996) (citing SSR 83-12).  If the ALJ had incorporated into her hypothetical the specific time intervals for the

16

sit/stand option, as well as Dr. Tanna's restrictions that Harper could stand or walk only 2 hours a day, needed a cane, must avoid vibrations, and had limitations on his ability to use foot controls, the VE may very well have found that Harper would not qualify for light work.  If relegated to sedentary work, Harper would be presumptively disabled based on his age and limited skills. *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12.

Notably, Dr. Tanna's March 2, 2012, opinion was rendered prior to and without the benefit of medical evidence documenting a decline in Harper's condition, including findings of nerve root impingement and radiculopathy.  The ALJ did have the benefit of that additional medical evidence, yet she determined that Harper needed fewer restrictions than Dr. Tanna.  She did so without the benefit of an alternative medical opinion to support her RFC.  In this regard, the ALJ erred by "playing doctor." *Allen v. Comm'r of Soc. Sec.,* No. 12–15097, 2013 U.S. Dist. LEXIS 150236, *44–45, 2013 WL 5676254 (E.D.Mich. Sept. 13, 2013) *adopted by* 2013 U.S. Dist. LEXIS 149851, 2013 WL 5676251 (E.D.Mich. Oct. 18, 2013). "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Id.*

17

(collecting cases).

Thus, the ALJ's RFC is not supported by substantial evidence in the record.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Harper's Motion for Summary Judgment **[R. 16]** be **GRANTED** and that this matter be remanded for an immediate award of benefits, and that the Commissioner's Motion **[R 18]** be **DENIED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 8, 2015

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 8, 2015.

s/Marlena Williams

19

MARLENA WILLIAMS
Case Manager